### BOHLMAN v. AMERICAN PAPER GOODS CO.

No. 403.

District Court, D. New Jersey.

July 16, 1946.

See, also, 53 F.Supp. 794.

Drewen & Nugent and Frederick M. Rollenhagen, all of Jersey City. N. J., for plaintiff.

McCarter, English & Studer and Conover English, all of Newark, N. J., Fred A. Klein, of New York City, and J.

Harold Williams, of Hartford, Conn., for defendant.

MEANEY, District Judge.

This is an action having for its object the impression of a trust ex maleficio upon a patent, the subject matter of which is an invention allegedly disclosed by the plaintiff to the defendant and wrongfully appropriated by the latter to its own use. Plaintiff seeks also to restrain the further use and exploitation of the invention and an accounting for all profits derived from its use.

The action is based upon the claim of the plaintiff, Bohlman, that pursuant to the terms of an agreement between himself and the defendant, American Paper Goods Company, he, Bohlman, disclosed an inventive idea for the construction of a mechanism for dieing, forming and gumming a flanged bottom paper cup.

Plaintiff claims that after full disclosure was made and a machine constructed, the defendant advised him that his mechanism was unsuccessful and, subsequently, through fraudulent means, induced him to sign a release. The plaintiff asserts further that some years later he learned that the defendant company was in fact producing cups according to the design and method he had disclosed, the defendant having secured a patent therefor, in the name of Henry B. Cooley, an employee of the defendant, who had assigned the patent (Cooley patent No. 1,962,983) to the said defendant.

The plaintiff's testimony, as it was developed at the trial, was to the effect that the plaintiff had for a number of years prior to 1927 experimented with the mechanics of paper cup construction. During this period he had become acquainted with representatives of the defendant company and subsequently made known to them that he had an idea for the development of a mechanism to manufacture a watertight, flat bottom round cup, for which there was a great demand in the industry.

The conversation resulted in the drawing of an agreement dated July 6, 1927, under the terms of which the plaintiff agreed to disclose his ideas for the design of a mechanism for dieing, forming, inserting and properly gumming a flange bottom into a round cup. The defendant company agreed to furnish the services of a draftsman to make the necessary drawings, and further agreed to permit the modification of one of defendant's machines, then in production of disc bottom cups, to accommodate the proposed Bohlman mechanism.

Pursuant to the terms of the agreement, the defendant company sent Thomas E. Emerson, a draftsman in its employ, to Boston. In Boston the plaintiff met with Emerson, disclosed his ideas, and Emerson then drew full scale drawings of the mechanism the plaintiff had described.

Thereafter, Emerson returned to the defendant's plant where further shop drawings were made and a machine constructed.

The plaintiff's testimony thereafter was to the effect that he was notified by the defendants that the mechanism was not successful, that the flanged bottoms failed to adhere to the side walls of the cups and the cups were not water tight. The plaintiff stated that he wrote several letters making suggestions as to changes to be made in the glue being used, and that he made a trip to defendant's plant in September and again in December of 1927 to attempt to make necessary adjustments.

On the latter occasion, the plaintiff insists he was not permitted access to the machine although he remained in and about defendant's factory for several days. Finally, plaintiff testified that he was advised that the defendant company had decided to abandon the machine. This was followed, according to Bohlman's testimony, by a meeting between himself and one, Mr. Frank, and a Mr. Hay, in the defendant's Boston office, in May of 1928, at which time, on the assurance of Mr. Frank that the defendant company was not going to use the cup or mechanism disclosed by Bohlman, he, Bohlman, agreed to sign a release then presented to him, releasing the defendant company from the terms of the agreement previously entered into. Bohlman further testified that he had no other correspondence with the defendant until September of 1933. At that time, according to Bohlman's testimony he learned that the defendant company was in fact producing his identical cup upon the mechanism he

had described. He thereupon wrote to the defendant recalling that the defendant company had agreed not to utilize the information he had disclosed.

The plaintiff testified further that the Cooley patent above referred to, and under which the defendant company was and is admittedly manufacturing paper cups, embodied identically the ideas and mechanism as it had been imparted by Bohlman to Emerson. That, reduced to its briefest form, is the essence of the plaintiff's case.

In defense, the defendant denied that the Cooley patent (supra) in fact represented any of the ideas imparted by Bohlman and introduced in evidence the drawings allegedly made by Emerson while in Boston, from the information given by Bohlman. It is the defendant's contention that these drawings accurately reflect the disclosures in fact made by Bohlman.

Emerson testified that the drawings, one bearing the notation "sketched at Boston July 26, 1927 T. E.", and the other the same notation but dated "July 27, 1927," had been made by him while in Boston and had been approved by Bohlman as a faithful reproduction of the ideas imparted. This was denied by the plaintiff who testified that he had never before seen the two drawings and did not see at any time any drawings made while Emerson was in Boston. Defendant denied also that the release had been procured under false or fraudulent conditions and insisted that no fraud was practiced upon Bohlman in securing the release.

The testimony adduced by both parties to this suit has been extensive. A large number of witnesses were produced by both sides and considerable evidence was put before the court relating to paper cup manufacture, novelty and the allegedly fraudulently procured release.

On almost all material points the testimony has been sharply contradictory. At the outset it may be stated that the Court, having given such probative value to the evidence as is warranted, is satisfied that the sketches introduced by the defendant as having been drawn in Boston at the direction of the plaintiff are a faithful reproduction of the ideas actually then disclosed by Bohlman to Emerson. Against these and other evidence and the oral testimony of Emerson is the unsupported assertion by Bohlman that the information he in fact disclosed is found incorporated in the Cooley patent design (supra).

This contention of Bohlman is controverted by the testimony given by him on his direct examination, wherein he related what he disclosed to the draftsman of the defendant company, which disclosure seems to the court to be completely inadequate to sustain his contention. True, on rebuttal, he amended his testimony to include certain significant notions (entirely absent from his direct testimony) which might tend to support his assertion that he disclosed material suggestions later appropriated by Cooley. But this testimony came after full discussion by other witnesses as to the distinguishing inventive feature of the Cooley patent, no indication of which was included in the original drawings or in Bohlman's direct evidence. It is probable that Bohlman is himself convinced that the design disclosed in the Cooley patent is actually that which he imparted to the defendant company. However, the Court is satisfied that such is not the fact and in view of all the evidence presented, the court makes the following findings of fact and conclusions of law.

Findings of Fact.

1. Plaintiff, George Bohlman, resides in Belmont, Middlesex County, Commonwealth of Massachusetts, and is a citizen of said Commonwealth.

2. The defendant, American Paper Goods Company, is a corporation duly organized and existing under and by virtue of the laws of the State of New Jersey.

3. This is a civil action which has for its objects: first, the impression of a trust ex maleficio upon a patent, the subject matter of which is an invention allegedly disclosed by the plaintiff to the defendant and wrongfully appropriated by the latter to its own use; second, the restraint of the further use and exploitation of the invention; and, third, an accounting for illicit profits and a recovery for damages.

4. Defendant is a manufacturer of paper goods, having its factory at Kensington, Connecticut.

5. Plaintiff, Bohlman, in the year 1913 became associated with the American Water Supply Company of New England, which company, among other things, manufactured paper cups. Plaintiff was employed with said company in various capacities, ultimately becoming superintendent and assistant general manager.

6. During the period of his association with said company and until 1922, plaintiff experimented with the mechanics of paper cup manufacture and had issued to him several patents for the manufacture of various types and parts of such cups. These patents were assigned by plaintiff to various other persons and companies.

7. In 1926 plaintiff entered into employment not connected with paper cup manufacture. He continued, however, to experiment with cup construction, attempting to develop a watertight flat bottom round cup for which there was great demand in the industry.

8. As early as 1915 or 1916 plaintiff came in contact with one, Edgar P. Hay, who was the Boston Sales representative of the defendant American Paper Goods Company.

9. The defendant, American Paper Goods Company, had been engaged in the manufacture, among other things, of paper cups for several years prior to 1927.

10. In 1927 the plaintiff entered into discussions with Mr. Hay and Mr. Arthur W. Frank, an employee of the defendant Company, relative to having the defendant company develop on their machines certain ideas then in the mind of the plaintiff, for the construction and manufacture of a round flat bottomed cup.

11. These conversations resulted in the drawing and signing of a contract dated July 6, 1927, between the plaintiff and defendant whereby plaintiff was to design an automatic mechanism for dieing, forming, inserting and properly gumming a flange bottom in a round cup.

12. The contract provided that the defendant company would furnish the services of a draftsman for a period of at least one week. The draftsman was to put into drawings the ideas disclosed by Bohlman. The contract provided also for a payment of $100 upon the signing of the agreement and further payments upon completion of approved drawings, upon completion of one machine, and upon completion of additional machines. The contract also set forth that the work was to be completed in a manner satisfactory to the defendant company.

13. Pursuant to the terms of the agreement, on July 25, 1927, Mr. Thomas W. Emerson, a draftsman in the employ of the defendant company, went from Kensington, Connecticut, to Boston, where he met the plaintiff at the Parker House in Boston.

14. Thomas W. Emerson, a competent draftsman, was then and now is an employee of the defendant corporation, being presently in charge of the mechanical department of the said company.

15. On the visit to Boston above referred to, Mr. Emerson brought with him the necessary drawing equipment to enable him to draft into the finished form the ideas to be imparted by the plaintiff.

16. On the evening of July 25, 1927, plaintiff discussed with Emerson the details of his device and furnished, in addition, two free hand drawings or sketches previously made by him to further illustrate the ideas he disclosed.

17. On the following day Emerson reduced the ideas disclosed by plaintiff to full scale drawings and on that evening plaintiff against visited Emerson where he went over the work sketched by Emerson during the day, and made further suggestions.

18. On the following day, July 27, 1927, Emerson made further drawings and details of the device disclosed by Bohlman and in the early evening of that day Bohlman returned and examined and approved the plans drawn by Emerson. Two complete full scale drawings of plaintiff's design were made by Emerson while in Boston, both of which plaintiff examined and approved as faithful reproductions of the ideas he had disclosed.

19. The following day Emerson returned to the defendant's plant in Kensington where an additional elevation drawing and

12 shop drawings detailing the parts of the Bohlman machine were made.

20. The drawings were ultimately submitted to the machine shop foreman in order to have the parts made up and assembled into a working unit to be attached to one of the production machines then in operation in defendant's plant. The machine that was to be changed over to accommodate the Bohlman device was an 8 mandrel machine designed to make flanged bottom round cups under Cooley patent No. 1,199,160.

21. One of such machines was then removed from production under a plant requisition order dated September 22, 1927, and the Bohlman parts assembled thereon in the machine shop. This process took approximately 3 weeks.

22. Prior to the time that the assembled Bohlman unit was run on one of the machines, some cups were made by a hand and lathe operation with the completed parts of the Bohlman device. The cups so made were not fully satisfactory, there having been evident difficulty in glueing the bottom flange to the cup walls.

23. After the parts were assembled on the machine, the latter was run in the machine shop but failed to produce, consistently, cups that would not leak, although from time to time a cup came off the machine that was water tight. These cups continued to show the same difficulty in glueing the bottom flange to the cup side walls.

24. The defendant company, as early as August 5, 1927, wrote to the plaintiff asking him to send a sample of the gum to be used in testing out some sample cups. This letter was followed by repeated correspondence between the defendant and the plaintiff seeking a glue or gum that would prove satisfactory in adhering the bottom flange to the side walls.

25. Between the time that the Bohlman device was assembled and attached to the machine in October and the following December, continuous efforts were made to produce the required water tight cups, but without success.

26. In the latter part of December, 1927, the plaintiff made a trip to Kensington to examine the mechanism and determine, if possible, where the fault lay in the failure of the machine to produce water tight cups.

27. While on this visit, Bohlman was permitted access to the machine and he then attempted to make adjustments on the mechanism to remedy, if possible, the difficulty being encountered. He was unsuccessful in his efforts and failed to achieve satisfactory results.

28. On the following January 23, 1928, the Bohlman mechanism was dismantled and the original Cooley machine returned to production in the defendant's plant without the plaintiff's apparatus being attached thereto.

29. Subsequently, Mr. Bohlman was advised by Mr. Frank that the mechanism was unsatisfactory to the American Paper Goods Company, and in April, 1928, the defendant company arranged for the signing of a release by Mr. Bohlman of the terms and conditions of the contract. A payment of $550 was to be made when the release was signed.

30. On May 11, 1928 Mr. Bohlman signed a release in the office of the Boston Safe Deposit and Trust Company, in the presence of Mr. Hay and John H. Eaton, Jr., a notary public, before whom Mr. Bohlman acknowledged his signature. Mr. Frank was not present at that time.

31. At the same time that he signed the release a check in the sum of $550 payable to the order of George H. Bohlman and drawn on the American Paper Goods Company and dated May 9, 1928, was handed to the plaintiff.

32. Thereafter, until September 16, 1933, there was no further correspondence between the plaintiff and defendant company. On that date, Bohlman wrote to the defendant company stating that he had discovered that, contrary to the terms of the contract, and in violation of the conditions under which he had executed the release, the defendant company was in fact manufacturing flat bottom paper cups according to the method and design he had disclosed.

33. The disclosures made by Bohlman to Emerson, and reduced by Emerson to machine drawings and later made into working

parts and assembled on one of the defendant company's machines, never successfully and consistently produced the water tight flat bottom round paper cups sought by the defendant company.

34. The Bohlman design for a cup making mechanism was intended to produce a round cup, having a flat bottom. To construct such a cup Bohlman proposed to utilize a flanged bottom with the flange turned down and the side wall of the cup body turned and tied in to the inside of the flange. A glue line was placed upon the cup wall so that when the wall was turned against the flange, glue would be on both sides of the cup wall as it came in contact with and was rolled against the inside and outside portions of the bottom flange.

35. The Bohlman mechanism consisted primarily of a reciprocating plunger having a recess at the base into which the cup bottom was placed for insertion into the cup body. At the base of the recess was a part referred to as a stop which served to hold the bottom in place when the plunger was withdrawn to permit the rolling of the turned cup sides against the flange of the bottom. The plunger was placed within a turret mandrel or station and was brought to a thin edge around the bottom end to permit the bottom edges of the cup body to be turned inwards and over the bottom flange.

A gum or glue line, about 5/16ths of an inch wide and about 1/16th of an inch from the end thereof, was put on the inside cup body. The plunger on moving forward to insert the bottom and permit the cup body wall to be turned back over the bottom flange, went to within 7/32nds of an inch of the end, thereby coming directly into contact with the glue line.

The next step in the Bohlman cup construction design was the rolling of the cup body and the turned side against the flange of the bottom. To perform this operation, the plunger moved back, the stop meanwhile remaining stationary to hold the bottom in position for the rolling.

The rolling operation was performed on what are referred to as truncated rollers. These rollers were held together on a disc and consisted altogether of four rollers, two large and two small. The small rollers were on an arm. Between the arm and the main studs which held the larger rollers was a small spring which provided a tension between the large and small rollers.

After the plunger had moved back, the truncated rollers advanced. The rollers were so placed in relation to the end of the cup body that when they advanced it was intended that the cup body would enter between the rollers, the larger rollers coming in contact with the outside of the cup body and supporting it, and the smaller rollers coming in contact with the inside edge of the turned cup body. The roller head traveled at a high speed of something over a thousand revolutions per minute.

36. The mechanism failed to perform satisfactorily. The reasons for the failure are several, but two primary factors are particularly important and indicate fatal error of design in vital functions of operation. It appears, first, that the design of the reciprocating plunger made it necessary that the plunger head advance well into the gum line and on being withdrawn would necessarily destroy the even texture and tend to remove a portion thereof. The result was that insufficient gum or glue remained on the cup body wall to adhere tightly to the bottom flange. This in all likelihood accounts in part, at least, for the repeated requests by the defendant company to Bohlman for a better or more efficient glue and the failure of any glue to satisfy the demands.

The second fundamental error lay in the construction of the truncated rollers. The rollers were so placed that when the roller head went forward, the end of the cup hit the face of the smaller rollers and became distorted when forced between the rollers for the rolling operation. Under the method outlined, it was necessary that there be a highspring tension between the large and small rollers in order that the cup body wall and turned side properly adhere to the bottom flange. The highspring tension, however, distorted the cup as and after it entered the roller. In order to avoid the distortion it was necessary to ease up on the spring tension, but by so doing there was not sufficient roller pressure to hold the flange and cup sides together.

37. There was further defect in this mechanism, in that when the plunger head was withdrawn there was an excessive space between the cup bottom flange and the body of the cup, resulting in an excess amount of cup body paper and resulting also in the cup bottom being of smaller diameter than the diameter of the cup where it was to be inserted. Consequently, while the cup body and the bottom flange were pressed together during the rolling, there was a strong tendency for the flange to recede from the side wall of the cup after being rolled, the glue being of insufficient strength to hold it. Various further defects in the Bohlman mechanism are apparent, but need not be examined into at this time.

38. In 1938, following the abandonment of the Bohlman mechanism, Henry B. Cooley began the development of a new type of machine designed to produce essentially the same type of cup that Bohlman had unsuccessfully attempted. Cooley was successful in his efforts and was granted Cooley patent No. 1,962,983 on July 12, 1934, and subsequently assigned the same to the defendant company.

39. Prior to the granting of the above patent, Henry B. Cooley had been granted several other patents relating to various phases of paper cup manufacture.

40. The Cooley patent under which the defendant company is presently producing the cups under consideration involves, a novel addition to and adaptation of already patented machines which provide a method of inserting cup bottoms entirely different from that disclosed by Bohlman to the defendant company.

41. The Cooley patent discloses a method by which the flange bottom is inserted into a recess in the mandrel instead of the recess of the plunger as was done in the Bohlman device. The next step was to have an ejector move outwardly and locate the cup bottom in position for assembly with the cup body. A spinner then moved into position for the purpose of curling the cup body end around the downward flange of the cup bottom. Before the cup base enters the spinner groove, a clamp fastens the cup body to the mandrel.

During the spinner operation, there is no edge inside the cup over which the cup body is turned as is evident in the Bohlman mechanism, the curling or turning being brought about as a result of the body wall entering into the spinner groove and the rotary motion of the spinner.

When the turning operation is completed, the spinner is withdrawn and the roller next moves into place. At the same time and as part of the rolling operation, a clamp is moved into engagement with the cup body giving the cup body outside support, against which the spinners in the roller head exert pressure. This outside support for the cup body was entirely lacking in the Bohlman device, the Bohlman roller relying on the outside and larger roller for such support.

The Cooley roller head contains two small rollers or spinners which fit readily within the cup bottom. After entering the bottom area, an expansion pin within the roller head moves forward to exert pressure on the rollers moving them against the inside of the folded cup wall and bottom flange. Sufficient pressure may then be applied to secure the flange and cup body tightly without distortion, since the clamp gives the cup body support on all sides. The next operation after rolling the bottom flange and body walls was the blowing off of the cup, completing this phase of the cup construction.

## Conclusions of Law.

1. There was no fraud practiced upon the plaintiff by the defendant in the securing of the release.

2. There is no evidence of wrongdoing on the part of the defendant as to compel the impression of a trust ex maleficio upon Cooley patent # 1,962,938.

3. There has been established no basis for the issuance of a restraint against the further use of the said patent.

4. Neither has there been established any basis to compel an accounting for all profits or damages arising out of the use of the said patent by the defendant.

A decree may be entered dismissing the complaint.